**FOREST PARK PROPERTIES OF ARLINGTON, INC., Appellant,**

v.

**T. W. PADGETT et ux., Appellees.**

**No. 15991.**

Court of Civil Appeals of Texas.

Fort Worth.

April 3, 1959.

Rehearing Denied May 1, 1959.

William L. Bagby, Arlington, and Richard Owens, Fort Worth, for appellant.

Wm. L. Bondurant, Arlington, for appellee T. W. Padgett et ux.

George M. Feild, Dallas, for appellee Security Title & Trust Co. of Texas.

BOYD, Justice.

Forest Park Properties of Arlington, Inc., sued T. W. Padgett and wife, Anna C. Padgett, in trespass to try title, and Security Title & Trust Company of Texas on its title policy if title failed to any part of the land covered by the policy. The Title Company's motion for summary judgment was sustained; and on trial to the court judgment was rendered that Forest Park Properties take nothing against the Padgetts and that title to the land involved be vested in them. Forest Park Properties appeals.

The land in controversy is a strip about 20 by 557 feet, and the suit involves a construction of the description in several deeds. The agreed common source of title was George W. Fender and wife. The land is part of a tract conveyed by the Fenders to Mrs. Duke, described as follows: "being forty acres out of the Eleazer Daggett 640 acre survey, patent No. 435 Vol. No. 18, described by metes and bounds as follows: Beginning at the Northwest corner of said Daggett Survey thence south with the west line of said Daggett survey 475 vrs. to a stake on a line with fence on south line of this tract; thence east 475 vrs. to a stake; thence north 475 vrs. to the northeast corner of this tract on the north line of said Daggett Survey; thence west with said line 475 vrs. to the place of beginning." Mrs. Duke conveyed the 40 acres to Fox and wife, who in turn conveyed it to the Sheffields, both deeds using the same metes and bounds description as in the deed to Mrs. Duke.

By deed dated June 27, 1951, and filed for record October 12, 1955, the Sheffields conveyed to the appellees Padgetts a part of the 40 acre tract, described as beginning 220 feet from the southwest corner of the 40 acre tract, "Thence North along the east line of Henry Road, 200 feet to an iron stake for corner; Thence East 544.5

feet to an iron pipe for corner; Thence South 200 feet to an iron pipe for corner; Thence West 544.5 feet to the place of Beginning and containing 2½ acres of land, more or less."

Mr. Sheffield having died, Mrs. Sheffield on July 29, 1952, by deed filed for record August 14, 1952, conveyed to the Padgetts a tract described as beginning at the southwest corner of the 40 acre tract; thence north along its west line 220 feet to a point for corner, "said point being the Southwest corner of a 2½ acre tract now owned by T. W. Padgett et ux."; thence east along the south line of the 2½ acre tract to its southeast corner; thence north with its east line and parallel with the west line of the 40 acre tract 200 feet; thence east 50 feet; thence south and parallel with the west line of the 40 acre tract 420 feet for corner in its south line; thence west with the south line 594.5 feet to the beginning.

By deed dated April 1, 1953, and filed for record September 8, 1953, Mrs. Sheffield conveyed to the Padgetts a tract described as beginning "at the point in the West line of said 40-acre tract 420 feet North of the Southwest corner, said point being the Northwest corner of a tract now owned by Travis W. Padgett; Thence, North with the west line of said 40-acre tract, 137 feet to point for corner; Thence, East parallel with the South line of said 40-acre tract 594.5 feet to point for corner; Thence, South parallel with the West line of said tract 137 feet to the Northeast corner of the Padgett tract; Thence, West parallel with the South line of said tract and along the North line of the Padgett tract 594.5 feet to the place of beginning."

On February 9, 1956, Mrs. Sheffield conveyed to appellant a tract out of the same 40 acres described as follows: "Beginning at the Northwest corner of said Daggett Survey and the Northwest corner of said 40 acre tract; Thence South with the West line of said Survey 763 feet to the Northwest corner of a tract of land con-

veyed to Travis W. Padgett by Grantor herein by deed dated April 1, 1953, and recorded in Volume 2610, Page 145, of the Deed Records of Tarrant County, Texas; Thence East with the North line of said Padgett tract 594.5 feet to point for corner; Thence South parallel with the West line of said Survey and along the East line of a 7½ acre tract owned by Padgett, 557 feet to point for corner in the South line of said 40 acre tract; Thence East with the South line of said 40 acre tract 725.5 feet to its Southeast corner; Thence North with the East line of said 40 acre tract 1320 feet to the Northeast corner of said 40 acre tract; Thence West with the North line of said Survey and the North line of said 40 acre tract, 1320 ft. to the Place of Beginning; containing 32.37 acres of land more or less."

Appellant's points for reversal are that (1) the description in the deeds was not ambiguous; (2) the appellees Padgetts did not connect with the common source of title; (3) the appellees Padgetts were not entitled to affirmative relief reforming their deeds; and (4) the Title Company was liable to appellant for loss of title to part of the land.

It was stipulated that the west line of the Daggett Survey was the center of Henry Road, which is also known as Fielder Road and Masonic Home Road. It is 40 feet wide.

When the deeds are applied to the ground, a latent ambiguity is disclosed. The first Padgett deed describes this tract as beginning 220 feet "from" the southwest corner of the 40 acre tract, thence north "along the East line of Henry Road." The second Padgett deed describes that tract as beginning at the southwest corner of the 40 acre tract, thence north along its west line 220 feet to a point for corner, "said point being the Southwest corner of a 2½ acre tract now owned by T. W. Padgett et ux." If the west line of the second tract followed the center of the road, it could not join the southwest corner of the first

tract, which is 20 feet east of the center of the road. Likewise, the southwest corner of the third tract could not coincide with the northwest corner of the first tract if one corner is in the center of the road and the other is 20 feet east of the center of the road.

With the record in this condition, the court admitted testimony as to the actions and intentions of the parties to the Padgett deeds. According to T. W. Padgett's testimony, when he purchased the first tract, Mr. Sheffield went with him upon the ground, and Sheffield pointed out stakes at the four corners of the tract; there were iron pipes in the ground which Sheffield said marked the southwest and northwest corners of the tract; one was on the fence line on the east side of Henry Road and the other was about one foot west of the fence; Sheffield told him that the west line was the east line of the road, approximately the fence line; when he was in the process of buying the second tract, Sheffield showed him a stake as the southwest corner of that tract, which was on or near the east fence line; before buying the third tract, Mrs. Padgett, Mr. Sheffield, a Mr. Wadlington and witness went on the land and, starting at the northwest corner of the 2½ acre tract, at an iron pipe in the east line of the road, they measured 137 feet north for the northwest corner of the third tract, and there placed a stake in the east line of the road; the Sheffields told him that the west line of his three tracts was the east line of Henry Road.

Mrs. Sheffield testified that the 40 acres was under fence when she and her husband bought it; a fence was on the west side of what is now the Padgett land; "and that is what we supposed was the boundary line"; there were stakes in the fence line; she considered the east line of the road to be her west line, and intended by the deeds to Padgett to convey to the east line of Henry Road.

A written contract, dated September 1, 1951, which was subsequently rescinded, was introduced, which described 10 acres intended to be conveyed by the Sheffields to Padgett, as "Beginning at the Southwest corner of the Padgett 2½ Acre Tract in the East line of Masonic Home Road and extending along East line of said Road 220 feet to the Southwest corner of Sheffield's 40 Acre Tract to an iron pipe for corner; Thence East * * *."

The rule seems to be that where a deed is ambiguous, and especially where the ambiguity is latent, and the parties have given a practical construction thereto, such construction may be resorted to in ascertaining their intention, or to explain the ambiguity. 26 C.J.S. Deeds § 100, sub. e, p. 872. Parol evidence may be admitted of the facts and circumstances surrounding the execution of the deed and of the intention of the parties. Allison v. Smith, Tex.Civ.App., 281 S.W.2d 136, reversed in part on other grounds, Smith v. Allison, 301 S.W.2d 608; Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436; Clark v. Regan, Tex.Civ.App., 45 S.W. 169; Ascarete v. Pfaff, 34 Tex.Civ.App. 375, 78 S.W. 974; Miller v. Hodges, Tex.Com.App., 260 S.W. 168; Barreda v. Cavazos, Tex.Civ.App., 266 S.W. 611.

In Allison v. Smith, Tex.Civ.App., 281 S.W.2d 136, 143, it was said: "The deed is ambiguous. The court did not err in admitting evidence of facts and circumstances surrounding the execution of the deed, the simultaneous execution of leases, which were provided for in the deed, and parol evidence of the parties' intention."

While there were no separate findings of fact or conclusions of law, we think the implied finding that the parties to the Padgett deeds intended that the west line of the tracts should be the east line of Henry Road is amply supported.

We think the Padgetts did connect title with the common source. Appellant introduced the deed from the Fenders to Mrs. Duke; the deed from Mrs. Duke to Fox;

the deed from Fox and wife to the Sheffields; the deed from Mrs. Sheffield to itself; and also, for the purpose of showing cloud upon its title, the deeds from the Sheffields to the Padgetts. The Padgetts introduced the Sheffield deeds to themselves. W. T. Carter & Bro. v. Rhoden, Tex.Civ. App., 72 S.W.2d 620; Snowden v. Glaspy, Tex.Civ.App., 127 S.W.2d 508.

■ Appellees Padgetts pleaded not guilty only. Appellant says that they were not entitled to affirmative relief. It is true that by the judgment appellant took nothing and that title to the disputed strip was vested in the Padgetts. But, as was said in Myricks v. Heilbron, Tex.Civ.App., 170 S.W.2d 827, 829, "In an action of trespass to try title on part of plaintiff and a plea of not guilty on part of defendant, a judgment decreeing that plaintiff 'take nothing' has the legal effect of divesting plaintiff of whatever title he may have, and to vest title in the defendant, therefore the fact that the judgment expressly vested title in defendant would not be erroneous."

■ We think appellant's suit against the Title Company was premature, and that it was not reversible error to sustain the motion for summary judgment and dismiss as to that defendant. The court's order was that the motion for summary judgment be sustained "and this suit be dismissed as to the defendant Security Title & Trust Company of Texas as prematurely brought." We think this amounted to the sustaining of a plea in abatement. The obligation of the Title Company was to defend suits brought against appellant to recover property the title to which was insured, when written notice of such suit and authority to defend have been furnished the Company, and it was provided that the Company would not be liable until an adverse interest or right has been established in a court of last resort. Neither contingency is shown to have existed.

The judgment is affirmed.